UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
UNITED STATES OF AMERICA,     )
                              )
    v.                        )
                              )   Criminal Action No. 05-100-7 (RWR)
JASMINE BELL,                 )
                              )
    Defendant.                )
_____)
```

## MEMORANDUM OPINION

Petitioner Jasmine Bell moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence arguing that his attorney provided ineffective assistance by not complying with his instruction to file a notice of appeal. The government opposes Bell's motion arguing that Bell did not ask his attorney to file a notice of appeal. Because Bell has not proven by a preponderance of the evidence that he asked his attorney to file a notice of appeal, Bell's motion will be denied.

BACKGROUND

In November 2001, Jasmine Bell was arrested for various drug-related offenses. See Mem. of Law and Args. in Supp. of Mot. to Vacate, Set Aside, or Correct an Illegal Sentence Pursuant to Title 28 Sect. 2255 ("Pet'r Mem.") at 4. In January 2002, Bell was serving misdemeanor sentences imposed by the D.C. Superior Court that expired in September 2002. Id. In May

2002, Bell was sentenced to three years imprisonment for a drug offense and, in August 2002, Bell was sentenced to an additional two years of imprisonment by the D.C. Superior Court for another drug offense.  See id.; see also United States' Mot. to Dismiss Def.'s Nunc Pro Tunc Mot. ("Gov't Mot.") at 1-2; Pet'r Mem., Ex. 2, Decl. of Patrick Liotti ("Liotti Decl.") ¶¶ 4-5.  Thus, when Bell's original misdemeanor sentence expired, he began serving an aggregated total of five years.  See Pet'r Mem. at 4; see also Liotti Decl. ¶ 11.

In December 2002, Bell was received at the Federal Correctional Institute in Beckley, West Virginia to serve his five-year sentence.[1]  Pet'r Mem. at 4.  He was indicted in a superseding indictment for various drug charges by a federal grand jury in 2005.  Gov't Mot. at 2.  While Bell was serving his five-year sentence, he was transported to the United States District Court for the District of Columbia by the U.S. Marshals under a writ of habeas corpus ad prosequendum to face his federal charges.  Pet'r Mem. at 4; Gov't Mot. at 2.

In August 2006, Bell pled guilty under Federal Rule of Criminal Procedure 11(c)(1)(C)[2] to conspiracy to engage in

---

[1] D.C. Code offenders are housed in federal prisons or contract facilities.  See Liotti Decl. ¶ 6.

[2] A Rule 11(c)(1)(C) plea agreement reflects the parties' agreement on a particular term of imprisonment or a range of imprisonment.  Fed. R. Crim. P. 11(c)(1)(C).

racketeering in violation of 18 U.S.C. § 1962(d). Gov't Mot. at 3. The plea agreement exposed Bell to a range of 135 to 168 months imprisonment. Id. Before sentencing, Bell's attorney, Joseph Beshouri, moved under United States Sentencing Guidelines ("USSG") § 5G1.3 for a reduction, below the range agreed to in the plea agreement, in light of Bell's D.C. Superior Court sentences.[3] United States' Resp. to Def.'s Nunc Pro Tunc Mot. ("Gov't Resp."), Ex. D, Def.'s Mem. in Aid of Sentencing at 7-10. This court denied the reduction motion and on December 1, 2006, sentenced Bell to 146 months, within the agreed-upon range. Id., Ex. E, Tr. of Bell's Sentencing ("Sent'g Tr.") at 61-62; id., Ex. F at 2.

In March of 2007, Bell wrote the court a letter seeking credit on his current sentence for time he spent detained while awaiting trial. Gov't Mot. at 3-4; Pet'r Mem., Ex. 3, Mar. 2007 Letter. In October of 2007, Bell wrote a second letter in which he requested appointment of a new attorney because his attorney would not file an appeal on his behalf. See Gov't Resp., Ex. I, Oct. 2007 Letter. Bell, who was at that time housed at the Federal Correctional Institute in Bennettsville, South Carolina, then filed a petition for a writ of habeas corpus under 28

---

[3] Perhaps because of challenges like these, Rule 11(c)(1)(C) plea agreements in this district now tend to include language in which the defendant will waive any right to move for a USSG reduction. See infra n.7.

U.S.C. § 2241 in the United States District Court for the District of South Carolina.  <u>See</u> Pet'r Mem. at 4.  Bell's petition was denied.  <u>Id.</u>

Bell moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence arguing that he received ineffective assistance of counsel because his trial counsel, Beshouri, failed to appeal despite Bell's request to Beshouri to file an appeal.  The government opposes, arguing that Bell never asked Beshouri to file a notice of appeal.  Because of the factual disputes on the record, an evidentiary hearing on Bell's § 2255 claim was held on July 18, 2014.  Because Bell has failed to prove by a preponderance of the evidence that he asked Beshouri to file a notice of appeal, Bell's motion will be denied.

<u>DISCUSSION</u>

In a § 2255 motion, a petitioner can move the sentencing court to "vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States, . . . or [if] the sentence was in excess of the maximum authorized by law[.]"  28 U.S.C. § 2255(a).  The burden lies on the petitioner to prove the violation by a preponderance of the evidence.  <u>United States v. Pollard</u>, 602 F. Supp. 2d 165, 168 (D.D.C. 2009).

The Sixth Amendment provides criminal defendants the right to be represented by counsel.  U.S. Const. amend. VI.  Implicit

in this guarantee is that counsel will provide effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) ("[T]he right to counsel is the right to the effective assistance of counsel."). In order to prove ineffective assistance of counsel, Bell must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 684-88, 694 (1984). "The Strickland test extends to claims of ineffective assistance based on a failure to file an appeal. . . . A lawyer who disregards specific instructions from the petitioner to file a notice of appeal acts in a professionally unreasonable manner." United States v. Felder, 563 F. Supp. 2d 160, 167 (D.D.C. 2008) (citing United States v. Taylor, 339 F.3d 973, 977 (D.C. Cir. 2003)).

> Counsel's failure to file an appeal requested by the client "cannot be considered a strategic decision." . . . A petitioner is entitled to resentencing and to an appeal without having to show that it would likely have had merit when his counsel does not file a requested appeal. . . . If a petitioner's attorney does not comply with a request to file an appeal, the sentence will be vacated and the petitioner will be resentenced to allow him to appeal.

Moore v. United States, 881 F. Supp. 2d 125, 136 (D.D.C. 2012) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)).[4]

In addition, Bell's appeal had to have been taken within 10 days after his sentencing judgment was entered. Fed. R. App. P. 4(b)(1)(A)(i), 4(b)(6).[5] Alternatively, "[u]pon a finding of excusable neglect or good cause, the district court may . . . extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed . . . ." Id. 4(b)(4); see also Evidentiary Hr'g Tr., July 18, 2014, ("Hr'g Tr.") at 70:23-71:8.

Here, Bell contends that he asked Beshouri to file an appeal, in person, immediately following his sentencing hearing and again, through letters, in the months following his sentencing hearing. Bell also contends that Beshouri failed to file any such notice of appeal and thereby rendered ineffective assistance. Since it is undisputed that Beshouri did not file a

---

[4] If the petitioner's attorney fails to consult with his client regarding an appeal, "the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Flores-Ortega, 528 U.S. at 478. However, Bell has not alleged that his attorney failed to consult with him regarding an appeal.

[5] At the time Bell was sentenced, the appellate rules provided 10 days to appeal a sentence. In 2009, the time period changed to 14 days. Fed. R. App. P. 4, Advisory Committee Notes (2009 Amendments) ("*Subdivisions (b)(1)(A) and (b)(3)(A)*. The times set in the former rule at 10 days have been revised to 14 days.").

notice of appeal, the central factual issues are whether Bell asked Beshouri to file a notice of appeal and if so, the date on which Bell made the request.

In this case, the judgment was entered on December 8, 2006, Gov't Resp., Ex. F, Judgment at 1; Hr'g Tr. at 91:20-92:13, giving Bell until December 18, 2006 to file a notice of appeal. Bell presented unrebutted testimony that he asked Beshouri to file an appeal while they were in the holding cell, immediately following the sentencing hearing on December 1, 2006.[6] Hr'g Tr. at 15:12-16. Beshouri, on the other hand, testified that he had no recollection of the conversation, id. at 71:21-22, and did not remember talking to Bell immediately following Bell's sentencing hearing. Id. at 71:25-72:4.[7]

---

[6] Bell testified that he was "just trying to remember everything that happened to the best of [his] ability." Hr'g Tr. at 53:4-6. As it happens, there were minor inconsistencies. Bell first testified that his conversation with Beshouri after his sentencing hearing did not include a lot of details about why he wanted an appeal, id. at 15:15-19, and ended when Beshouri said no. Id. at 15:21-16:8; 16:14-19. On cross-examination, Bell's testimony was slightly different. He testified that he told Beshouri the reasons why he wanted an appeal and that he urged Beshouri to file an appeal even after Beshouri told him that there was no need to file an appeal. Id. at 50:24-52:3, 52:18-25. However, these events took place eight years ago, and this, on its own, does not irreparably impair Bell's credibility.

[7] Beshouri's inability to recall a conversation with Bell following Bell's sentencing hearing is not enough, on its own, for Bell to succeed in a § 2255 motion based on ineffective assistance of counsel because the burden is not on Beshouri to prove that Bell never asked for an appeal. Instead, the burden

Although Beshouri does not recall such a conversation, evidence demonstrates that Beshouri vigorously represented Bell moments before any conversation he may have had in the holding cell after Bell's sentencing hearing. Hr'g Tr. at 12:20-23, 13:1-16, 67:8-18, 68:15-69:23. Beshouri's efforts to seek a USSG § 5G1.3 reduction of Bell's sentence was so vigorous that, at one point in the hearing, the prosecutor threw down his papers and threatened to revoke the plea agreement.[8] Id. at 23:19-23, 32:5-12, 57:2-58:16, 69:16-23, 90:18-91:3; see also Sent'g Tr. at 48 (at the sentencing, the prosecutor stated "I apologize to the Court and counsel if I acted more animatedly than I needed to. I am upset about it, clearly, and I do clearly think that . . . this is trying to breach the

---

is on Bell to prove that it is more likely than not that Bell asked for an appeal. Pollard, 602 F. Supp. 2d at 168.

[8] At Bell's sentencing hearing, the prosecutor thought the plea agreement was clear by its terms in that it would not allow Bell to move for a downward departure. Hr'g Tr. at 57:15-20; Sent'g Tr. at 48. However, at the sentencing, Beshouri argued that the plea agreement was ambiguous, id. at 46, and that a USSG § 5G1.3 departure was appropriate, even in light of the fact that the parties engaged in a Rule 11(c)(1)(C) plea. Hr'g Tr. at 68:7-69:23. Bell's Rule 11(c)(1)(C) plea agreement did not contain unequivocal language that the defendant could not seek a downward departure, as such plea agreements in this district often state today. See, e.g., United States v. Hubbard, Criminal Action No. 13-65 (RWR), Plea Agreement at 5 ¶ 5C ("[N]either party will seek any departure or adjustment to the Estimated Guidelines Range, nor will either party suggest that the Court consider such a departure or adjustment . . . ."); United States v. Brown, Criminal Action No. 13-164 (RWR), Plea Agreement at 5 ¶ 5C (same).

agreement[.]"). Even though Beshouri testified that he was "not sure what there was to appeal [after the sentencing,]" Hr'g Tr. at 76:21-22, his vigor during the sentencing makes it unlikely that he, immediately following this hearing, would choose to ignore or reject a directive of his client to file a notice of appeal.

Beshouri also credibly testified that he would have filed an appeal had he been asked to do so. Hr'g Tr. at 71:22-24. Beshouri noted that it was his practice, when a client asked for an appeal, to file the notice of appeal and immediately contact the Federal Public Defenders' Office so that the Federal Public Defenders' Office would assign the client a new appellate attorney. Id. at 77:16-25. Beshouri further credibly testified that he was aware that it was *per se* ineffective for an attorney not to file an appeal when a client asked that an appeal be filed. Id. at 77:6-8; Gov't Resp., Ex. L, Beshouri Decl. ("Beshouri Decl.") at 1.

Bell did not present any evidence to rebut Beshouri's claim that it was Beshouri's practice to file a notice of appeal when his clients asked for one or to request that the Federal Public Defenders' Office assign a new attorney to cover any appeal. Nor did Bell present evidence that Beshouri had any incentive to lie, that Beshouri was not aware of the requirements to file an appeal when a client asked for one, or that Beshouri was

anything but vigilant in his defense of Bell (outside of Bell's testimony regarding his request for an appeal).

Instead, evidence suggests that Beshouri's representations of his practice are reliable. Beshouri had been practicing criminal defense for 20 years at the time he represented Bell and was knowledgeable of what was at risk when a client asks for an appeal. Hr'g Tr. at 63:11-21. A risk is posed both for the client who may have a meritorious claim on appeal and for the attorney whose reputation is at stake if she or he fails to file the appeal and later faces an ineffective assistance of counsel claim, like the one here. Id. at 77:6-25; Beshouri Decl. at 1. These consequences would have been heightened for Beshouri, who testified that filing a notice of appeal would have been a simple action that required minimal effort on his part, but could have had huge professional consequences because he spent at least 95 percent of his practice in criminal defense. Hr'g Tr. at 63:11-21, 77:6-25; Beshouri Decl. at 1.

Further, Bell presents no evidence, outside of his claim that Beshouri failed to file an appeal, to suggest that Beshouri was not a zealous advocate for Bell. Nor has he presented additional affirmative evidence of his conversation with Beshouri following his sentencing hearing. While Bell testified that his brother was in the holding cell at the time Bell asked Beshouri to file an appeal, Hr'g Tr. at 12:10-14, Bell did not

call his brother as a witness. Bell has not carried his burden to demonstrate that, more likely than not, Bell asked Beshouri to file an appeal immediately following the sentencing hearing.

Outside of the conversation in the holding cell, Bell presented unrebutted testimony that Bell tried to contact Beshouri via phone and mail, beginning two to three weeks after the sentencing, "around Christmastime[,]" and into 2007. Id. at 17:15-18:24.[9] Thus, there is unrebutted testimony that Bell asked Beshouri to file a notice of appeal within the 30-day timeframe allotted to file an appeal due to "excusable neglect or good cause[.]" Fed. R. App. P. 4(b)(4).

However, Bell has not produced any such letters from this time period. There is unrebutted testimony that, unfortunately, Bell was unable to make copies because Bell did not have access to such material because he was placed in a restrictive housing unit at the time. Hr'g Tr. at 18:25-19:14. Without more, Bell's unrebutted testimony is not enough to prove by a preponderance of the evidence that Bell asked Beshouri to file a notice of appeal.

It may be worth noting that Beshouri wrote Bell a letter in October 2007 acknowledging that Bell asked Beshouri in October

---

[9] However, Bell noted that "it was in 2007 when [he] really started corresponding with [Beshouri] about the appeal." Hr'g Tr. at 21:22-25.

2007 to file a motion to correct his sentence.[10]  Resp. to Gov't
Resp. to Nunc Pro Tunc Mot. 2255, Ex. A, Oct. 2007 Letter at 1.
Although October 2007 would have been long outside the 10-day
(or 30-day) timeframe, at best, this letter corroborates Bell's
prior statements that Bell had reached out to Beshouri "for
months."  See Gov't Resp., Ex. I, Oct. 2007 Letter; Hr'g Tr. at
22:5-9.  Nevertheless, without additional proof of other letters
to Beshouri[11] (or evidence of Beshouri's incredibility),
Beshouri's letter to Bell in October 2007 does not prove that it
is more likely than not that Bell asked Beshouri to file a
notice of appeal within the 10-day (or 30-day) period he had in
which to do so.[12]

---

[10] Beshouri's declaration, prepared eight years after the correspondence, failed to acknowledge this correspondence. Beshouri Decl. at 2.  At the evidentiary hearing, Beshouri amended his declaration to reflect the fact that his memory was refreshed based on viewing the letter.  Hr'g Tr. at 81:1-82:8. Given the lapse of time, this is not sufficient, on its own, to significantly undermine Beshouri's credibility.  Moreover, the burden is on Bell to show that Beshouri should not be believed. Pollard, 602 F. Supp. 2d at 168.  Bell has not carried that burden.

[11] Beshouri noted that he did not have all of his correspondence from this period.  Hr'g Tr. at 78:13-22. Therefore, it is possible that there were more letters from Bell to Beshouri.  However, this possibility is not enough to demonstrate that it is more likely than not that Bell asked Beshouri to file a notice of appeal timely.

[12] At the evidentiary hearing, the government also presented correspondence and filings by Bell.  However, this evidence is dated beyond the deadlines to file a notice of appeal and did not mention Bell's appeal.  See Hr'g Tr. at 43:8-45:24

At best, the record is at equipoise. Yet, ultimately, it is Bell's burden to prove that it is more likely than not that the events happened in accordance with his testimony, and he has failed to do so.

## CONCLUSION

Because Bell has failed to prove by a preponderance of the evidence that he asked Beshouri to file a notice of appeal, Bell is not entitled to relief under 28 U.S.C. § 2255 and his motion will be denied. An appropriate Order accompanies this Memorandum Opinion.

SIGNED this 28th day of August, 2014.

```
                    /s/
          RICHARD W. ROBERTS
          Chief Judge
```

---

(discussing Gov't Ex. 5, Bell's letter to Beshouri in either 2008 or 2009 asking Beshouri to file for a sentence reduction in light of a change in the sentencing guidelines); id. at 46:6-11 (discussing Bell's 2008 motion to reduce his sentence because of a change in the sentencing guidelines) (citing United States' Proposed Findings of Fact and Conclusions of Law, Ex. 6); id. at 46:22-47:14 (discussing a letter to Bell from a different attorney in 2009 discussing Bell's motion for a sentence reduction in light of the change in the sentencing guidelines).